# EXHIBIT 7

Form **1023**
(Rev. December 2013)
Department of the Treasury
Internal Revenue Service

## Application for Recognition of Exemption (99)
### Under Section 501(c)(3) of the Internal Revenue Code
(Use with the June 2006 revision of the Instructions for Form 1023 and the current Notice 1382)

OMB No. 1545-0056

**Note:** *If exempt status is approved, this application will be open for public inspection.*

*Use the instructions to complete this application and for a definition of all **bold** items.* For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at **www.irs.gov** for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I - XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

### Part I    Identification of Applicant

| | |
|---|---|
| **1**   Full name of organization (exactly as it appears in your **organizing document**)<br><br>Fast Food Justice, Inc. | **2**  c/o Name (if applicable) |

| | | |
|---|---|---|
| **3**   **Mailing address** (Number and street) (see instructions)<br><br>25 W. 18th Street | Room/Suite | **4**  Employer Identification Number (EIN)<br><br>81-3255558 |

| | |
|---|---|
| City or town, state or country, and ZIP + 4<br><br>New York, NY 10011 | **5**  Month the annual accounting period ends (01-12)<br><br>06 |

**6**   Primary contact (officer, director, trustee, or **authorized representative**)
  **a** Name:
        Michael B. Trister  (Form 2848 attached)

  **b** Phone: 202-328-1666

  **c** Fax: (optional)

**7**   Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative.    ☑ Yes    ☐ No

**8**   Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role.    ☐ Yes    ☑ No

**9a**  Organization's website:  **fastfoodjustice.org**

  **b** Organization's email: (optional)

**10**  Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ.    ☐ Yes    ☑ No

**11**  Date incorporated if a corporation, or formed, if other than a corporation.    (MM/DD/YYYY)   7  / 13  / 2016

**12**  Were you formed under the laws of a **foreign country**? If "Yes," state the country.    ☐ Yes    ☑ No

For Paperwork Reduction Act Notice, see page 24 of the instructions.          Cat. No. 17133K          Form **1023** (Rev. 12-2013)

Form 1023 (Rev. 12-2013)  Name: Fast Food Justice, Inc.                    EIN:       81-3255558                    Page **2**

## Part II  Organizational Structure

You must be a corporation (including a limited liability corporation), an unincorporated association, or a trust to be tax exempt. (See instructions.) **DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.**

| | | | |
|---|---|---|---|
| 1 | Are you a **corporation**? If "Yes," attach a copy of your articles of incorporation showing **certification of filing** with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification. | ☑ Yes | ☐ No |
| 2 | Are you a **limited liability company (LLC)**? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application. | ☐ Yes | ☑ No |
| 3 | Are you an **unincorporated association**? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments. | ☐ Yes | ☑ No |
| 4a | Are you a **trust**? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments. | ☐ Yes | ☑ No |
| b | Have you been funded? If "No," explain how you are formed without anything of value placed in trust. | ☐ Yes | ☐ No |
| 5 | Have you adopted **bylaws**? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected. | ☑ Yes | ☐ No |

## Part III  Required Provisions in Your Organizing Document

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under Section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. **DO NOT file this application until you have amended your organizing document.** Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

| | | |
|---|---|---|
| 1 | Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. Location of Purpose Clause (Page, Article, and Paragraph): __Articles of Inc. P.2, Art.9, Para.A__ | ☑ |
| 2a | Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c. | ☑ |
| 2b | If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a.      __Articles of Inc. P.2, Art.9, Paragraph E__ | |
| 2c | See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: | ☐ |

## Part IV  Narrative Description of Your Activities

Using an attachment, describe your *past, present,* and *planned* activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

## Part V  Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors

1a List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual **compensation**, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| Tsedeye Gebreselassie | President | 101 Lafayette Ave., Apt. 14G Brooklyn, NY 11217 | none |
| Nelini Stamp | Secretary | 297 Smith Street, #3 Brooklyn, NY 11217 | none |
| Kevin Doyle | Treasurer | 260 Riverside Drive, #10A NY, NY 10025 | none |
| | | | |
| | | | |

Form 1023 (Rev. 12-2013) Name: Fast Food Justice, Inc.       EIN:   81-3255558       Page **3**

| Part V | Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)* |
| --- | --- |

**b** List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
| --- | --- | --- | --- |
| Autumn Weintraub | Executive Director | 463 50th Street Brooklyn, NY 11210 | $144,000.00 |
| Greg Reynoso | Lead Organizer | 405 Elk Street Albany, NY | $91,680.00 |
| Quincine Evans | Organizer | 446 Elton Street Brooklyn, NY 11208 | $81,600.00 |
| Lisa Delancy | Organizer | 359 9th Street, #B405 Brooklyn, NY 11205 | $64,000.00 |
| Jose Caraballo-Lopez | Organizer | 134 Worwick St., 2nd Fl Brooklyn, NY 11205 | $64,000.00 |

**c** List the names, names of businesses, and mailing addresses of your five highest compensated **independent contractors** that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
| --- | --- | --- | --- |
| Gladstein Reif & Meginniss | Legal Counsel | 817 Broadway, #6 New York, NY 10003 | $80,000 |
| Lisa Watson | Consultant | 412 7th Avenue, #1R Brooklyn, NY 11215 | $75,000 |
| | | | |
| | | | |
| | | | |

The following "Yes" or "No" questions relate to *past, present, or planned* relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, and 1c.

**2a** Are any of your officers, directors, or trustees **related** to each other through **family** or **business relationships**? If "Yes," identify the individuals and explain the relationship. ☐ Yes ☑ No

**b** Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees. ☐ Yes ☑ No

**c** Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship. ☑ Yes ☐ No

**3a** For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

**b** Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through **common control**? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement. ☐ Yes ☑ No

**4** In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use.

**a** Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy? ☑ Yes ☐ No
**b** Do you or will you approve compensation arrangements in advance of paying compensation? ☑ Yes ☐ No
**c** Do you or will you document in writing the date and terms of approved compensation arrangements? ☑ Yes ☐ No

Form 1023 (Rev. 12-2013)   Name: Fast Food Justice, Inc.                    EIN:        81-3255558                     **Page 4**

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** *(Continued)* |
|---|---|

**d** Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements?   ☑ Yes   ☐ No

**e** Do you or will you approve compensation arrangements based on information about compensation paid by **similarly situated** taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.   ☑ Yes   ☐ No

**f** Do you or will you record in writing both the information on which you relied to base your decision and its source?   ☑ Yes   ☐ No

**g** If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is **reasonable** for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c.

**5a** Have you adopted a **conflict of interest policy** consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c.   ☑ Yes   ☐ No

**b** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

**c** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?

**Note:** A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14.

**6a** Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through **non-fixed payments**, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.   ☐ Yes   ☑ No

**b** Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees who receive or will receive compensation of more than $50,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.   ☐ Yes   ☑ No

**7a** Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at **arm's length**, and explain how you determine or will determine that you pay no more than **fair market value**. Attach copies of any written contracts or other agreements relating to such purchases.   ☐ Yes   ☑ No

**b** Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales.   ☐ Yes   ☑ No

**8a** Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f.   ☑ Yes   ☐ No

**b** Describe any written or oral arrangements that you made or intend to make.

**c** Identify with whom you have or will have such arrangements.

**d** Explain how the terms are or will be negotiated at arm's length.

**e** Explain how you determine you pay no more than fair market value or you are paid at least fair market value.

**f** Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**9a** Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f.   ☐ Yes   ☑ No

Form 1023 (Rev. 12-2013)  Name: Fast Food Justice, Inc.                        EIN:        81-3255558                        Page **5**

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** *(Continued)* |
|---|---|

b  Describe any written or oral arrangements that you made or intend to make.

c  Identify with whom you have or will have such arrangements.

d  Explain how the terms are or will be negotiated at arm's length.

e  Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.

f  Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

| **Part VI** | **Your Members and Other Individuals and Organizations That receive Benefits From You** |
|---|---|

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | |
|---|---|---|
| **1a** In carrying out your exempt purposes, do you provide goods, services, or funds to individuals?<br>If "Yes," describe each program that provides goods, services, or funds to individuals. | ☑ Yes | ☐ No |
| **b** In carrying out your exempt purposes, do you provide goods, services, or funds to organizations?<br>If "Yes," describe each program that provides goods, services, or funds to organizations. | ☐ Yes | ☑ No |
| **2** Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. | ☐ Yes | ☑ No |
| **3** Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. | ☐ Yes | ☑ No |

| **Part VII** | **Your History** |
|---|---|

The following "Yes" or "No" questions relate to your history. (See instructions.)

| | | |
|---|---|---|
| **1** Are you a **successor** to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G. | ☐ Yes | ☑ No |
| **2** Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. | ☐ Yes | ☑ No |

| **Part VIII** | **Your Specific Activities** |
|---|---|

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | |
|---|---|---|
| **1** Do you support or oppose candidates in **political campaigns** in any way? If "Yes," explain. | ☐ Yes | ☑ No |
| **2a** Do you attempt to **influence legislation**? If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. | ☑ Yes | ☐ No |
| **b** Have you made or are you making an **election** to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. | ☑ Yes | ☐ No |
| **3a** Do you or will you operate bingo or **gaming** activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. **Revenue and expenses** should be provided for the time periods specified in Part IX, Financial Data. | ☐ Yes | ☑ No |
| **b** Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies or any written contracts or other agreements relating to such arrangements. | ☐ Yes | ☑ No |
| **c** List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo. | | |

Form 1023 (Rev. 12-2013) Name: Fast Food Justice, Inc.      EIN:      81-3255558      Page **6**

## Part VIII   Your Specific Activities *(Continued)*

**4a** Do you or will you undertake **fundraising**? If "Yes," check all the fundraising programs you do or will conduct. (See instructions.)    ☑ **Yes**   ☐ **No**

- ☑ mail solicitations
- ☑ email solicitations
- ☑ personal solicitations
- ☐ vehicle, boat, plane, or similar donations
- ☑ foundation grant solicitations
- ☑ phone solicitations
- ☑ accept donations on your website
- ☐ receive donations from another organization's website
- ☐ government grant solicitations
- ☐ Other

   Attach a description of each fundraising program.

**b** Do you or will you have written or oral contracts with any individuals or organizations to raise funds for you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. Also, attach a copy of any contracts or agreements.    ☐ Yes   ☑ No

**c** Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these arrangements. Include a description of the organizations for which you raise funds and attach copies of all contracts or agreements.    ☐ Yes   ☑ No

**d** List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.

**e** Do you or will you maintain separate accounts for any contributor under which the contributor has the right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the types of investments, distributions from the types of investments, or the distribution from the donor's contribution account. If "Yes," describe this program, including the type of advice that may be provided and submit copies of any written materials provided to donors.    ☐ Yes   ☑ No

**5** Are you **affiliated** with a governmental unit? If "Yes," explain.    ☐ Yes   ☑ No

**6a** Do you or will you engage in **economic development**? If "Yes," describe your program.    ☐ Yes   ☑ No

**b** Describe in full who benefits from your economic development activities and how the activities promote exempt purposes.

**7a** Do or will persons other than your employees or volunteers **develop** your facilities? If "Yes," describe each facility, the role of the developer, and any business or family relationship(s) between the developer and your officers, directors, or trustees.    ☐ Yes   ☑ No

**b** Do or will persons other than your employees or volunteers **manage** your activities or facilities? If "Yes," describe each activity and facility, the role of the manager, and any business or family relationship(s) between the manager and your officers, directors, or trustees.    ☐ Yes   ☑ No

**c** If there is a business or family relationship between any manager or developer and your officers, directors, or trustees, identify the individuals, explain the relationship, describe how contracts are negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any contracts or other agreements.

**8** Do you or will you enter into **joint ventures**, including partnerships or **limited liability companies** treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3) organizations? If "Yes," describe the activities of these joint ventures in which you participate.    ☐ Yes   ☑ No

**9a** Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines 9b through 9d. If "No," go to line 10.    ☐ Yes   ☑ No

**b** Do you provide child care so that parents or caretakers of children you care for can be **gainfully employed** (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes   ☐ No

**c** Of the children for whom you provide child care, are 85% or more of them cared for by you to enable their parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes   ☐ No

**d** Are your services available to the general public? If "No," describe the specific group of people for whom your activities are available. Also, see the instructions and explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes   ☐ No

**10** Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other **intellectual property**? If "Yes," explain. Describe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed.    ☐ Yes   ☑ No

Form 1023 (Rev. 12-2013) Name: Fast Food Justice, Inc.　　　　　EIN:　　81-3255558　　　　Page **7**

| Part VIII | Your Specific Activities *(Continued)* |
|---|---|

| | | | |
|---|---|---|---|
| **11** | Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution. | ☐ Yes | ☑ No |
| **12a** | Do you or will you operate in a **foreign country** or **countries?** If "Yes," answer lines 12b through 12d. If "No," go to line 13a. | ☐ Yes | ☑ No |
| **b** | Name the foreign countries and regions within the countries in which you operate. | | |
| **c** | Describe your operations in each country and region in which you operate. | | |
| **d** | Describe how your operations in each country and region further your exempt purposes. | | |
| **13a** | Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b through 13g. If "No," go to line 14a. | ☐ Yes | ☑ No |
| **b** | Describe how your grants, loans, or other distributions to organizations further your exempt purposes. | | |
| **c** | Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract. | ☐ Yes | ☐ No |
| **d** | Identify each recipient organization and any **relationship** between you and the recipient organization. | | |
| **e** | Describe the records you keep with respect to the grants, loans, or other distributions you make. | | |
| **f** | Describe your selection process, including whether you do any of the following: | | |
| | **(i)** Do you require an application form? If "Yes," attach a copy of the form. | ☐ Yes | ☐ No |
| | **(ii)** Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the purposes for which the grant was made, provides for periodic written reports concerning the use of grant funds, requires a final written report and an accounting of how grant funds were used, and acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear to be, misused. | ☐ Yes | ☐ No |
| **g** | Describe your procedures for oversight of distributions that assure you the resources are used to further your exempt purposes, including whether you require periodic and final reports on the use of resources. | | |
| **14a** | Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer lines 14b through 14f. If "No," go to line 15. | ☐ Yes | ☑ No |
| **b** | Provide the name of each foreign organization, the country and regions within a country in which each foreign organization operates, and describe any relationship you have with each foreign organization. | | |
| **c** | Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or specific organization? If "Yes," list each earmarked organization or countries. | ☐ Yes | ☐ No |
| **d** | Do your contributors know that you have ultimate authority to use contributions made to you at your discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this information to contributors. | ☐ Yes | ☐ No |
| **e** | Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided, and other relevant information. | ☐ Yes | ☐ No |
| **f** | Do you or will you use any additional procedures to ensure that your distributions to foreign organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures, including site visits by your employees or compliance checks by impartial experts, to verify that grant funds are being used appropriately. | ☐ Yes | ☐ No |

Form 1023 (Rev. 12-2013)   Name **Fast Food Justice, Inc.**   EIN: **81-3255558**   Page **8**

| Part VIII | Your Specific Activities *(Continued)* | | |
|---|---|---|---|
| 15 | Do you have a close connection with any organizations? If "Yes," explain. | ☐ Yes | ☑ No |
| 16 | Are you applying for exemption as a cooperative hospital service organization under section 501(e)? If "Yes," explain. | ☐ Yes | ☑ No |
| 17 | Are you applying for exemption as a **cooperative service organization of operating educational organizations** under section 501(f)? If "Yes," explain. | ☐ Yes | ☑ No |
| 18 | Are you applying for exemption as a **charitable risk pool** under section 501(n)? If "Yes," explain. | ☐ Yes | ☑ No |
| 19 | Do you or will you operate a **school**? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☑ No |
| 20 | Is your main function to provide **hospital** or **medical care**? If "Yes," complete Schedule C. | ☐ Yes | ☑ No |
| 21 | Do you or will you provide **low-income housing** or housing for the **elderly** or **handicapped**? If "Yes," complete Schedule F. | ☐ Yes | ☑ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. | ☐ Yes | ☑ No |

**Note: Private foundations** may use Schedule H to request advance approval of individual grant procedures.

Form 1023 (Rev. 12-2013)  Name: Fast Food Justice, Inc.           EIN:        81-3255558              Page **9**

## Part IX   Financial Data

For purposes of this schedule, years in existence refer to completed tax years. If in existence 4 or more years, complete the schedule for the most recent 4 tax years. If in existence more than 1 year but less than 4 years, complete the statements for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. If in existence less than 1 year, provide projections of your likely revenues and expenses for the current year and the 2 following years, based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. (See instructions.)

### A. Statement of Revenues and Expenses

| | Type of revenue or expense | Current tax year | 3 prior tax years or 2 succeeding tax years | | | (e) Provide Total for (a) through (d) |
|---|---|---|---|---|---|---|
| | | (a) From July 2016 To June 2017 | (b) From July 2017 To June 2018 | (c) From July 2018 To June 2019 | (d) From _____ To _____ | |
| 1 | Gifts, grants, and contributions received (do not include unusual grants) | 2,000,000 | 2,300,000 | 2,500,000 | | 6,800,000 |
| 2 | Membership fees received | 0 | 0 | 0 | | 0 |
| 3 | Gross investment income | 0 | 0 | 0 | | 0 |
| 4 | Net unrelated business income | 0 | 0 | 0 | | 0 |
| 5 | Taxes levied for your benefit | 0 | 0 | 0 | | 0 |
| 6 | Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge) | 0 | 0 | 0 | | 0 |
| 7 | Any revenue not otherwise listed above or in lines 9–12 below | 0 | 0 | 0 | 0 | 0 |
| 8 | Total of lines 1 through 7 | 2,000,000 | 2,300,000 | 2,500,000 | 0 | 6,800,000 |
| 9 | Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes | 0 | 0 | 0 | | 0 |
| 10 | Total of lines 8 and 9 | 2,000,000 | 2,300,000 | 2,500,000 | 0 | 6,800,000 |
| 11 | Net gain or loss on sale of capital assets | 0 | 0 | 0 | | 0 |
| 12 | Unusual grants | 0 | 0 | 0 | | 0 |
| 13 | Total Revenue Add lines 10 through 12 | 2,000,000 | 2,300,000 | 2,500,000 | 0 | 6,800,000 |
| 14 | Fundraising expenses | 1,000 | 1,500 | 1,500 | | |
| 15 | Contributions, gifts, grants, and similar amounts paid out | 0 | 0 | 0 | | |
| 16 | Disbursements to or for the benefit of members | 0 | 0 | 0 | | |
| 17 | Compensation of officers, directors, and trustees | 0 | 0 | 0 | | |
| 18 | Other salaries and wages | 963,000 | 970,000 | 970,000 | | |
| 19 | Interest expense | 0 | | | | |
| 20 | Occupancy (rent, utilities, etc.) | 17,043 | 17,400 | 17,400 | | |
| 21 | Depreciation and depletion | | | | | |
| 22 | Professional fees | 500,000 | 175,000 | 175,000 | | |
| 23 | Any expense not otherwise classified, such as program services | 644,200 | 650,000 | 700,000 | | |
| 24 | Total Expenses Add lines 14 through 23 | 2,125,243 | 1,813,900 | 1,863,900 | | |

Form 1023 (Rev. 12-2013) Name: Fast Food Justice, Inc.    EIN:    81-3255558    Page **10**

| Part IX | Financial Data *(Continued)* |
|---|---|

### B. Balance Sheet (for your most recently completed tax year)

**Assets**

| | | | |
|---|---|---|---|
| 1 | Cash . . . . . . . . . . . . . . . . . . . | 1 | 0 |
| 2 | Accounts receivable, net . . . . . . . . . . . . | 2 | 0 |
| 3 | Inventories . . . . . . . . . . . . . . . | 3 | 0 |
| 4 | Bonds and notes receivable . . . . . . . . . | 4 | 0 |
| 5 | Corporate stocks . . . . . . . . . . . . . | 5 | 0 |
| 6 | Loans receivable . . . . . . . . . . . . . | 6 | 0 |
| 7 | Other investments . . . . . . . . . . . . . | 7 | 0 |
| 8 | Depreciable and depletable assets . . . . . . . | 8 | 0 |
| 9 | Land . . . . . . . . . . . . . . . . . | 9 | 0 |
| 10 | Other assets . . . . . . . . . . . . . . | 10 | 0 |
| 11 | Total Assets (add lines 1 through 10) . . . . . . . . . . | 11 | 0 |

**Liabilities**

| | | | |
|---|---|---|---|
| 12 | Accounts payable . . . . . . . . . . . . . | 12 | 0 |
| 13 | Contributions, gifts, grants, etc. payable . . . . . . | 13 | 0 |
| 14 | Mortgages and notes payable . . . . . . . . . | 14 | 0 |
| 15 | Other liabilities . . . . . . . . . . . . . . | 15 | 0 |
| 16 | Total Liabilities (add lines 12 through 15) . . . . . . . | 16 | 0 |

**Fund Balances or Net Assets**

| | | | |
|---|---|---|---|
| 17 | Total fund balances or net assets . . . . . . . . . | 17 | |
| 18 | Total Liabilities and Fund Balances or Net Assets (add lines 16 and 17) . . . . . . . . | 18 | 0 |

19 Have there been any substantial changes in your assets or liabilities since the end of the period shown above? ☐ Yes ☑ No
If "Yes," explain.

| Part X | Public Charity Status |
|---|---|

Part X is designed to classify you as an organization that is either a **private foundation** or a **public charity**. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a **private operating foundation**. (See instructions.)

1a Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed. If you are unsure, see the instructions.    ☐ Yes ☑ No

b As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2.

2 Are you a private operating foundation? To be a private operating foundation you must engage directly in the active conduct of charitable, religious, educational, and similar activities, as opposed to indirectly carrying out these activities by providing grants to individuals or other organizations. If "Yes," go to line 3. If "No," go to the signature section of Part XI.    ☐ Yes ☐ No

3 Have you existed for one or more years? If "Yes," attach financial information showing that you are a private operating foundation; go to the signature section of Part XI. If "No," continue to line 4.    ☐ Yes ☐ No

4 Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit or opinion from a certified public accountant or accounting firm with expertise regarding this tax law matter), that sets forth facts concerning your operations and support to demonstrate that you are likely to satisfy the requirements to be classified as a private operating foundation; or (2) a statement describing your proposed operations as a private operating foundation?    ☐ Yes ☐ No

5 If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below. You may check only one box.
The organization is not a private foundation because it is:

a 509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A.    ☐

b 509(a)(1) and 170(b)(1)(A)(ii)—a **school**. Complete and attach Schedule B.    ☐

c 509(a)(1) and 170(b)(1)(A)(iii)—a **hospital**, a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital. Complete and attach Schedule C.    ☐

d 509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, g, or h.    ☐

Form 1023 (Rev. 12-2013)     Name: Fast Food Justice, Inc.                                    EIN:     81-3255558               Page **11**

| **Part X** | **Public Charity Status** *(Continued)* |
|---|---|

**e** 509(a)(4)—an organization organized and operated exclusively for testing for public safety. ☐

**f** 509(a)(1) and 170(b)(1)(A)(iv)—an organization operated for the benefit of a college or university that is owned or operated by a governmental unit. ☐

**g** 509(a)(1) and 170(b)(1)(A)(vi)—an organization that receives a substantial part of its financial support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public. ☑

**h** 509(a)(2)—an organization that normally receives not more than one-third of its financial support from gross **investment income** and receives more than one-third of its financial support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions). ☐

**i** A publicly supported organization, but unsure if it is described in 5g or 5h. The organization would like the IRS to decide the correct status. ☐

**6** If you checked box g, h, or i in question 5 above, you must request either an **advance** or a **definitive ruling** by selecting one of the boxes below. Refer to the instructions to determine which type of ruling you are eligible to receive.

**a** **Request for Advance Ruling:** By checking this box and signing the consent, pursuant to section 6501(c)(4) of the Code you request an advance ruling and agree to extend the statute of limitations on the assessment of excise tax under section 4940 of the Code. The tax will apply only if you do not establish public support status at the end of the 5-year advance ruling period. The assessment period will be extended for the 5 advance ruling years to 8 years, 4 months, and 15 days beyond the end of the first year. You have the right to refuse or limit the extension to a mutually agreed-upon period of time or issue(s). Publication 1035, *Extending the Tax Assessment Period*, provides a more detailed explanation of your rights and the consequences of the choices you make. You may obtain Publication 1035 free of charge from the IRS web site at *www.irs.gov* or by calling toll-free 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled. If you decide not to extend the statute of limitations, you are not eligible for an advance ruling. ☐

**Consent Fixing Period of Limitations Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code**

For Organization

| | | |
|---|---|---|
| (Signature of Officer, Director, Trustee, or other authorized official) | (Type or print name of signer) | (Date) |
| | (Type or print title or authority of signer) | |

For IRS Use Only

| | |
|---|---|
| IRS Director, Exempt Organizations | (Date) |

**b** **Request for Definitive Ruling:** Check this box if you have completed one tax year of at least 8 full months and you are requesting a definitive ruling. To confirm your public support status, answer line 6b(i) if you checked box g in line 5 above. Answer line 6b(ii) if you checked box h in line 5 above. If you checked box i in line 5 above, answer both lines 6b(i) and (ii). ☐

  **(i) (a)** Enter 2% of line 8, column (e) on Part IX-A. Statement of Revenues and Expenses. _____

     **(b)** Attach a list showing the name and amount contributed by each person, company, or organization whose gifts totaled more than the 2% amount. If the answer is "None," check this box. ☐

  **(ii) (a)** For each year amounts are included on lines 1, 2, and 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each **disqualified person.** If the answer is "None," check this box. ☐

     **(b)** For each year amounts are included on line 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each payer, other than a disqualified person, whose payments were more than the larger of (1) 1% of line 10, Part IX-A. Statement of Revenues and Expenses, or (2) $5,000. If the answer is "None," check this box. ☐

**7** Did you receive any unusual grants during any of the years shown on Part IX-A. Statement of Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and amount of the grant, a brief description of the grant, and explain why it is unusual.     ☐ Yes   ☑ No

Form 1023 (Rev. 12-2013)     Name: Fast Food Justice, Inc.     EIN: 81-3255558     Page **12**

| **Part XI** | **User Fee Information** |
|---|---|

*You must include a user fee payment with this application. It will not be processed without your paid user fee. If your average annual gross receipts have exceeded or will exceed $10,000 annually over a 4-year period, you must submit payment of $850. If your gross receipts have not exceeded or will not exceed $10,000 annually over a 4-year period, the required user fee payment is $400. See instructions for Part XI, for a definition of **gross receipts** over a 4-year period. Your check or money order must be made payable to the United States Treasury. User fees are subject to change. Check our website at www.irs.gov and type "User Fee" in the keyword box, or call Customer Account Services at 1-877-829-5500 for current information.*

1. Have your annual gross receipts averaged or are they expected to average not more than $10,000?  ☐ Yes ☑ No
   If "Yes," check the box on line 2 and enclose a user fee payment of $400 (Subject to change—see above).
   If "No," check the box on line 3 and enclose a user fee payment of $850 (Subject to change—see above).

2. Check the box if you have enclosed the reduced user fee payment of $400 (Subject to change).  ☐

3. Check the box if you have enclosed the user fee payment of $850 (Subject to change).  ☑

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

Please
Sign     ▶  _(Signature of Officer, Director, Trustee, or other authorized official)_    Kevin J Doyle _(Type or print name of signer)_     11/2/2016 _(Date)_

Treasurer _(Type or print title or authority of signer)_

**Reminder:** Send the completed Form 1023 Checklist with your filled-in-application.     Form **1023** (Rev.12-2013)



Form **1023** (Rev. 12-2013)

Supplemental Pages   Name: Fast Food Justice, Inc.                    EIN:          81-3255558      Page 1 of 4

**Part I    Identification of Applicant**

7. If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative.

Michael B. Trister, Trister, Ross, Schadler & Gold, PLLC, 1666 Connecticut Avenue, NW, Suite 500, Washington DC 20009 202-328-1666

**Part I    Identification of Applicant**

8. Provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role.

**Part IV    Narrative Description of Your Activities**

Using an attachment, describe your *past, present*, and *planned* activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

See attached.

**Part V    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors**

2b. Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees.

**Part V    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors**

2c. Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship.

Autumn Weintraub, Executive Director, is paid by the Service Employees International Union (SEIU).  One of the Directors, Kevin Doyle, is a consultant for SEIU. Fast Food Justice will reimburse SEIU for all of Autumn Weintraub's salary.

**Part V    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors**

3a. For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

1. Autumn Weintraub, Executive Director: Qualifications: 20 years working to help workers achieve better lives through unions and other organizations, directed multiple programs, supervised multiple staff; Avg. Hours worked: 40 per week;

**Supplemental Pages**   Name: Fast Food Justice, Inc.                    EIN:        81-3255558        Page **2 of 4**

Duties: Overall responsibility for organization, direct supervision of staff, liaison with other organizations working for same goals.

2. Gregory Reynoso, Lead Organizer: Qualifications: Worked in fast food industry, worked as organizer for 3 years, supervised staff or organizers for one year. Avg. Hours worked: 40-50 per week.  Duties: oversight and supervision of 4 organizers

3. Quincine Evans, Organizer:  Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week.  Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

4. Lisa Delancey, Organizer:  Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week.  Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

5. Jose Caraballo Lopez, Organizer:  Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week.  Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

1. Gladstein Reif & Meginniss, Law firm:  Qualifications: 40 years of civil rights, labor and employment law.
Hours worked: average 10 per week; Duties: oversee legal aspects of establishing the organization, setting policies and protocol for organization, handling all legal questions that may arise.

2. Lisa Watson, Administrative Consultant: Qualifications: 15 years experience in administration in large business; Hours worked: 27 per week; Duties: set up organization (lease, insurance, payroll, etc.), establish financial guidelines and controls, oversee administration of new organization, hire vendors and administrative staff.

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** |

5a. Have you adopted a **conflict of interest policy** consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c.

See attached Conflict of Interest policy adopted by the Board of Directors in July 2016.

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** |

5b. What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** |

5c. What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?

|  **Part VI** | **Your Members and Other Individuals and Organizations That receive Benefits From You** |

1a. In carrying out your exempt purposes, do you provide goods, services, or funds to individuals?
If "Yes," describe each program that provides goods, services, or funds to individuals.

See attached Part IV Narrative Description

Supplemental Pages   Name: Fast Food Justice, Inc.                     EIN:        81-3255558        **Page 3 of 4**

**Part VIII    Your Specific Activities**

2a. Do you attempt to **influence legislation?** If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a.
See attached Part IV Narrative Description, paragraph 6.

**Part VIII    Your Specific Activities**

4a. Do you or will you undertake **fundraising?** Attach a description of each fundraising program.
Other (describe):
Fast Food Justice will solicit donations from fast food workers and other individuals and organizations via email, mail, phone, and in person. We will accept donations on our website. Donations will be voluntary and will go towards supporting the organization.

**Part VIII    Your Specific Activities**

4d. List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.
New York City: we will raise funds for our own organization only. No other organization will fundraise for us.

**Part VIII    Your Specific Activities**

11. Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution.

**Part VIII    Your Specific Activities**

15. Do you have a close connection with any organizations? If "Yes," explain.

See attached Part IV Narrative Description

**Part IX    Financial Data**

23. Any expense not otherwise classified, such as program services

Canvas fees: $117,000
Insurance: $17,000
Printing & Supplies: $10,000
Meetings and meeting materials: $50,000
Materials for events: $30,000
Travel: $23,000
Staff and Leader Training: $20,000
Technology: $50,000
Storage: $7200

**Supplemental Pages**   Name: Fast Food Justice, Inc.                    EIN:          81-3255558      Page **4 of 4**

| Part X | Public Charity Status |
|--------|----------------------|

**1b.** As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2.

Form **5768**

(Rev. August 2013)

Department of the Treasury
Internal Revenue Service

# Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation

(Under Section 501(h) of the Internal Revenue Code)

▶ Information about Form 5768 and its instructions is at *www.irs.gov/form5768*.

For IRS
Use Only ▶

| Name of organization | Employer identification number |
|---|---|
| Fast Food Justice, Inc. | 81-3255558 |

| Number and street (or P.O. box no., if mail is not delivered to street address) | Room/suite |
|---|---|
| 25 W. 18th Street | 5th floor |

| City, town or post office, and state | ZIP + 4 |
|---|---|
| New York, NY | 10011 |

**1   Election—** As an eligible organization, we hereby elect to have the provisions of section 501(h) of the Code, relating to expenditures to influence legislation, apply to our tax year ending ................ December 31, 2016 ................ and all subsequent tax years until revoked.

(Month, day, and year)

**Note:** *This election must be signed and postmarked within the first taxable year to which it applies.*

**2   Revocation—** As an eligible organization, we hereby revoke our election to have the provisions of section 501(h) of the Code, relating to expenditures to influence legislation, apply to our tax year ending ................................................ and all subsequent tax years *(until a new election is made).*

(Month, day, and year)

**Note:** *This revocation must be signed and postmarked before the first day of the tax year to which it applies.*

Under penalties of perjury, I declare that I am authorized to make this (check applicable box) ▶    ☑ election    ☐ revocation on behalf of the above named organization.

(Signature of officer or trustee)   *Kevin J Doyle Treasurer*   11/2/2016
(Type or print name and title)   (Date)

# General Instructions

*Section references are to the Internal Revenue Code.*

Section 501(c)(3) states that an organization exempt under that section will lose its tax-exempt status and its qualification to receive deductible charitable contributions if a substantial part of its activities are carried on to influence legislation. Section 501(h), however, permits certain eligible section 501(c)(3) organizations to elect to make limited expenditures to influence legislation. An organization making the election will, however, be subject to an excise tax under section 4911 if it spends more than the amounts permitted by that section. Also, the organization may lose its exempt status if its lobbying expenditures exceed the permitted amounts by more than 50% over a 4-year period. For any tax year in which an election under section 501(h) is in effect, an electing organization must report the actual and permitted amounts of its lobbying expenditures and grass roots expenditures (as defined in section 4911(c)) on its annual return required under section 6033. See Part II-A of Schedule C (Form 990 or Form 990-EZ). Each electing member of an affiliated group must report these amounts for both itself and the affiliated group as a whole.

To make or revoke the election, enter the ending date of the tax year to which the election or revocation applies in item 1 or 2, as applicable, and sign and date the form in the spaces provided.

**Eligible organizations.** A section 501(c)(3) organization is permitted to make the election if it is not a disqualified organization (see below) and is described in:

**1.** Section 170(b)(1)(A)(ii) (relating to educational institutions),

**2.** Section 170(b)(1)(A)(iii) (relating to hospitals and medical research organizations),

**3.** Section 170(b)(1)(A)(iv) (relating to organizations supporting government schools),

**4.** Section 170(b)(1)(A)(vi) (relating to organizations publicly supported by charitable contributions),

**5.** Section 509(a)(2) (relating to organizations publicly supported by admissions, sales, etc.), or

**6.** Section 509(a)(3) (relating to organizations supporting certain types of public charities other than those section 509(a)(3) organizations that support section 501(c)(4), (5), or (6) organizations).

**Disqualified organizations.** The following types of organizations are not permitted to make the election:

**a.** Section 170(b)(1)(A)(i) organizations (relating to churches),

**b.** An integrated auxiliary of a church or of a convention or association of churches, or

**c.** A member of an affiliated group of organizations if one or more members of such group is described in **a** or **b** of this paragraph.

**Affiliated organizations.** Organizations are members of an affiliated group of organizations only if (1) the governing instrument of one such organization requires it to be bound by the decisions of the other organization on legislative issues, or (2) the governing board of one such organization includes persons (i) who are specifically designated representatives of another such organization or are members of the governing board, officers, or paid executive staff members of such other organization, and (ii) who, by aggregating their votes, have sufficient voting power to cause or prevent action on legislative issues by the first such organization.

For more details, see section 4911 and section 501(h).

**Note.** A private foundation (including a private operating foundation) is not an eligible organization.

**Where to file.** Mail Form 5768 to:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

Form **2848**
(Rev. Dec. 2015)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

▶ Information about Form 2848 and its instructions is at *www.irs.gov/form2848.*

OMB No. 1545-0150

| For IRS Use Only |
|---|
| Received by: |
| Name _____ |
| Telephone _____ |
| Function _____ |
| Date ___ / ___ / ___ |

## Part I   Power of Attorney

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1   Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| Fast Food Justice, Inc. | 81-3255558 |
| 25 W. 18th Street | **Daytime telephone number**     **Plan number (if applicable)** |
| New York, NY 10011 | 212-388-3682 |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Michael B. Trister | CAF No. _____ |
| Trister, Ross, Schadler, & Gold, PLLC | PTIN _____ |
| 1666 Connecticut Ave., NW, Suite 500, Washington DC 20009 | Telephone No. ____202-328-1666____ |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☑ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3   Acts authorized (you are required to complete this line 3).** With the exception of the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts that I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 5000A Shared Responsibility Payment, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| Application for Recognition of Exemption Under Section 501(c)(3) of Internal Revenue Code | 1023 | |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific Use Not Recorded on CAF . . . . . . . . . . . . . . ▶ ☐

**5a   Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information):

☐ Authorize disclosure to third parties;   ☐ Substitute or add representative(s);   ☐ Sign a return; _____

_____

_____

☐ Other acts authorized: _____

_____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.          Cat. No. 11980J          Form **2848** (Rev.12-2015)

Form 2848 (Rev. 12-2015)                                                                                                          Page **2**

**b  Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): ---------------

-----------------------------------------------------------------------------------------------------------------------------------

**6    Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here ............................................................................. ▶ ☐
     **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7    Signature of taxpayer.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.

     ▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| *X— /MM* | *11/2/2016* | *Treasurer* |
| Signature | Date | Title (if applicable) |
| *Kevin J Doyle* | *Fast Food Justice Inc.* | |
| Print Name | Print name of taxpayer from line 1 if other than individual | |

---

**Part II**    **Declaration of Representative**

Under penalties of perjury, by my signature below I declare that:

• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
• I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
• I am one of the following:

  **a**  Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  **b**  Certified Public Accountant—licensed to practice as a certified public accountant is active in the jurisdiction shown below.
  **c**  Enrolled Agent—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.
  **d**  Officer—a bona fide officer of the taxpayer organization.
  **e**  Full-Time Employee—a full-time employee of the taxpayer.
  **f**  Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).
  **g**  Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
  **h**  Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). See *Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*
  **k**  Student Attorney or CPA—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.
  **r**  Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

     ▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation—Insert above letter **(a–r)**. | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 12-2015)

Fast Food Justice, Inc. (EIN 81-3255558)

## Form 1023 Attachments

### Part IV Narrative Description of Activities

Fast Food Justice, Inc. qualifies for exemption as a charitable and educational organization under section 501c3 of the Internal Code because it is organized and will be operated to improve the lives of workers in the fast food industry in New York City, the vast majority of whom are poor, members of minority groups, homeless, or recent immigrants. In particular, Fast Food Justice will, inter alia, seek to educate fast food workers and their families about their legal rights in the workplace and at home and assist the workers to enforce those rights to the full extent provided by law. Fast Food Justice is not a labor organization and will not engage in collective bargaining on behalf of the fast food workers whom it aims to benefit.

*Nature of the Problem*:
There are over 90,000 fast workers employed throughout New York City, who reflect the racial and ethnic diversity of the city. Contrary to common stereotypes, fast food workers are not teenagers earning extra money, but are parents and grandparents relying on their fast food jobs to support immediate and extended families. Fast food jobs, which include cashiers, servers, cooks, food preparation workers, janitors, and security officers, are marked by low pay, insufficient hours, lack of meaningful benefits and paid time off, and fast-paced, often dangerous working conditions.

Approximately 40% of fast food workers in the U.S. live in poverty, with an average salary of $11,000 per year, well below the federal poverty level of $20,160 for a family of three. And a new study by the Berkeley Center for Labor Research and Education shows that nearly 52% of all fast food workers are dependent upon public assistance programs such as food stamps and Medicaid. In New York City, the median income of full-time fast food workers is $15,000, with the state spending approximately $903 million per year for such assistance.
Many fast food workers live in New York City neighborhoods with high concentrations of poverty, poor performing schools, and that lack reliable childcare and transportation. Despite working 2-3 jobs, many workers live in homeless shelters or are forced to live in overcrowded housing. Lacking financial resources and other support, immigrant fast food workers (64% of all fast food workers in New York City) have difficulty obtaining affordable immigration services, and tenants face insurmountable hurdles trying to navigate housing court or obtain affordable housing. Almost 90% of fast food workers in New York City are persons of color and face a disproportionate amount of abuse by police.

*Enforcing Legal Rights and other Protections for Fast Food Workers*:
Fast food workers in the City began organizing to improve their work lives in November 2012. At the time, almost all fast food workers earned $7.25 an hour with little or no paid time off or benefits. Over the courts of the past 4 years, however, a number of legal protections have been enacted which could begin to improve conditions for fast food and other low-wage workers, if fully enforced. For example, in 2015, workers convinced the governor of New York to convene a wage board, which ultimately adopted a minimum wage of $15.00 per hour for fast food workers by 2018

1

Fast Food Justice, Inc. (EIN 81-3255558)

in New York City, and New York City adopted a paid sick leave ordinance in 2014.  Fast food workers organizing efforts have not been limited to workplace issues, but they have also been at the forefront of the Black Lives matter movement and joined local efforts to expand affordable housing.

However, while these initial victories have been groundbreaking, there is much more work to do. But without the structure of an organization, and without financial support for that organization, further gains will be difficult and workers face the real risk of losing ground. For example, without adequate enforcement of their rights under the new minimum wage requirement, many fast food workers will never see those increases; a recent study found that 84% of fast food workers in New York City have experienced minimum wage and hour violations.

Accordingly, Fast Food Justice will seek to engage in the following activities:

1. Enforcement of Legal Rights: Fast Food Justice will conduct canvasses and surveys to identify whether the new and established rights of fast food workers are being violated, conduct know-your-rights seminars, assist workers in filing legal actions with enforcement agencies or in court, and conduct public demonstrations to gain compliance by employers, landlords, police, and others.

2. Education of Fast Food Workers: Fast Food Justice will educate fast workers on their legal rights, policy and legislative initiatives, and campaigns relevant to their work and communities, including by holding seminars and conferences, worksite visits, drafting materials, use of social media, and developing a leadership committee of fast food workers who will educate their co-workers.

3. Arts and Cultural Programs: Fast Food Justice will create a forum for fast food workers to express themselves artistically and culturally, including as means of building solidarity amongst co-workers and the public, and create a committee of fast food workers to lead this program.

4. Education of the Public about Fast Food Workers: Fast Food Justice will educate the public through social media, demonstrations, and written materials in order to gain support for fast food worker campaigns and help the public gain an understanding of the reality of fast food worker's lives.

5. Partnering with Other Organizations for Community Improvements: Fast Food Justice will partner with other social justice and service organizations advocating for social and economic improvements in the communities where fast food workers and their families live or work, such as immigrant rights organizations and organizations dedicated to racial, economic, and social justice.  For example, Fast Food Justice will collaborate with racial justice organizations to educate fast food workers on safe police interactions, refer workers to immigrations services, and partner with immigration organizations to conduct education and services clinics for fast food workers.

6. Policy and Legislative Advocacy. Fast Food Justice will, to the extent permitted by law, conduct campaigns to enact worker-friendly legislation and polices, such as predictable work scheduling, immigration reform, police reform, and affordable housing.  These campaigns will include developing advocacy materials, testifying in support of such legislation and polices, and holding public demonstrations.

2

Fast Food Justice, Inc. (EIN 81-3255558)

## Additional Information

### Part V, Question 1b

The employees listed therein are currently employed by other entities but most will be employed by Fast Food Justice, Inc. by early 2017.

### Part V, Question 2c

Autumn Weintraub, the Executive Director of Fast Food Justice, Inc. is paid by the Service Employees International Union (SEIU). Kevin Doyle is on the Board of Directors of Fast Food Justice, Inc., an unpaid position, and is a consultant for SEIU. Fast Food Justice will reimburse SEIU for all Autumn Weintraub's salary and benefits.

### Part V, Question 3a

Highest Compensated Employees

1. Autumn Weintraub, Executive Director. Qualifications: 20 years working to help workers achieve better lives through unions and other organizations, directed multiple programs, supervised multiple staff; Avg. Hours worked: 40 per week; Duties: Overall responsibility for organization, direct supervision of staff, liaison with other organizations working for same goals.

2. Gregory Reynoso, Lead Organizer. Qualifications: Worked in fast food industry, worked as organizer for 3 years, supervised staff or organizers for one year; Avg. Hours worked: 40-50 per week; Duties: oversight and supervision of 4 organizers

3. Quincine Evans, Organizer. Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week; Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

4. Lisa Delancey, Organizer. Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week; Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

5. Jose Caraballo Lopez, Organizer. Qualifications: Worked in fast food industry, worked as organizer for 4 years; Hours worked: 40-50 per week; Duties: responsible for reaching out to workers in fast food shops and informing them of changes in the industry, planning and conducting meetings with workers, participating with workers in activities with other workers.

Fast Food Justice, Inc. (EIN 81-3255558)

## Part V, Question 3a (Continued)

Highest Compensated Independent Contractors

1. Gladstein Reif & Meginniss, Law firm. Qualifications: 40 years of civil rights, labor and employment law; Hours worked: average 10 per week; Duties: oversee legal aspects of establishing the organization, setting policies and protocol for organization, handling all legal questions that may arise.

2. Lisa Watson, Administrative Consultant. Qualifications: 15 years' experience in administration in large business; Hours worked: 27 per week; Duties: set up organization (lease, insurance, payroll, etc.), establish financial guidelines and controls, oversee administration of new organization, hire vendors and administrative staff.

## Part V, Question 8

b. See attached consulting agreement
c. See attached consulting agreement
d. The agreement is standard for a legal consulting arrangement of this type and includes fair market rates.
e. Based on an assessment of what similarly-situated firms are paid for this type of work.
f. See attached consulting agreement

## Part VI, Question 1a

See Narrative (Part IV) above

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on October 11, 2016.

Brendan Fitzgerald
Executive Deputy Secretary of State

Rev. 09/16

160713000 4L8

## CERTIFICATE OF INCORPORATION

### OF

### FAST FOOD JUSTICE, INC.

Under section 402 of the Not-for-Profit Corporation Law

FIRST: The name of the corporation is FAST FOOD JUSTICE, INC..

SECOND: The corporation is a corporation as defined in subparagraph (5) of paragraph (a) of Section 102 of the Not-for-Profit Corporation Law.

THIRD: The purpose for which the corporation is formed is any purpose for which the corporation may be organized under the Not-for-Profit Corporation Law as a charitable corporation.

FOURTH: The corporation is not formed to engage in any activity or for any purposes requiring consent or approval of any state official, department, board, agency or other body. No consent or approval is required.

FIFTH: The corporation is a charitable corporation under Section 201 of the Not-for-Profit Corporation Law.

SIXTH: The office of the corporation is to be located in the County of New York, State of New York.

SEVENTH: The names and addresses of the three initial directors of the corporation are:

Nelini Stamp
297 Smith Street, Apt. 3
Brooklyn, N.Y. 11231

Tsedeye Gebreselassie
101 Lafayette Ave. , Apt. 14G
Brooklyn, N.Y. 11217

Kevin Doyle
260 Riverside Drive, Apt. 10A
New York, N.Y. 10025

160713000418

EIGHTH:    The Secretary of State is designated as agent of the corporation upon whom
process against it may be served.   The address to which the Secretary of State
shall mail a copy of any process accepted on behalf of the corporation is 260
Riverside Drive, Apt. 10A, New York, N. Y.10025.

NINTH:    A.   The corporation is organized for such educational and charitable purposes as
shall qualify it for exemption from federal taxation under section 501(c)(3) of the
Internal Revenue Code, including, but not limited to, improving the working
conditions and economic security of low-income fast food workers and their
families, and conducting public education, advocacy, and other activities
concerning such conditions and the economic status of low income fast food
workers and their families.

B.   In carrying out its purposes, the corporation shall not have or exercise any
power or authority granted to it under the Not-for-Profit Corporation Law, nor
engage directly or indirectly in any activity, that would prevent it from qualifying
as a corporation described in section 501(c)(3) of the Internal Revenue Code.   No
part of the assets or earnings, current or accumulated, of the corporation shall at
any time inure to the benefit of any private individual, within the meaning of the
prohibition contained in section 501(c)(3) of the Internal Revenue Code, except
that the corporation shall be authorized and empowered to make payments as
reasonable compensation for services rendered and/or as a reasonable allowance
for authorized expenditures incurred on behalf of the corporation and to make
payments and distributions in furtherance of the purposes set forth in this
Certificate of Incorporation.

C.   The corporation shall not carry on propaganda or otherwise attempt to
influence legislation to an extent that would disqualify it from tax exemption
under section 501(c)(3) of the Internal Revenue Code by reason of attempting to
influence legislation.   The corporation shall not participate or intervene in any
political campaign on behalf of or in opposition to any candidate for public office.

D.   The corporation shall never be operated for the primary purpose of carrying
on a trade or business for profit.

E.   Upon the termination, dissolution, or winding up of the corporation in any
manner or for any reason, its assets, if any, remaining after payment (or provision
for payment) of all liabilities of the corporation shall be distributed to, and only to,
one or more organizations described in section 501(c)(3) of the Internal Revenue
Code.

F.   Any reference herein to any provision of the Internal Revenue Code shall be
deemed to mean such provision as now or hereafter existing, amended, or
superseded, as the case may be.

Name of Incorporator: Michael B. Trister

Address:                1666 Connecticut Avenue, N.W., Suite 500
                        Washington, D.C. 20009


Signature: _____

41ƒ

CERTIFICATE OF INCORPORATION

OF

FAST FOOD JUSTICE, INC.

Under Section 402 of the Not-for Profit Corporation Law

Filer's Name:  Michael B. Trister

Mailing Address:  Trister, Ross, Schadler & Gold, PLLC
1666 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20009
(202) 328-1666 ext. 1332

2016 JUL 13 PM 2:39

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  JUL 1 3 2016
TAX $
BY:

RECEIVED
2016 JUL 13 PM 12:05

4S7

 **IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI   OH   45999-0023

Date of this notice:  07-15-2016

Employer Identification Number:
81-3255558

Form:  SS-4

Number of this notice:  CP 575 A

FAST FOOD JUSTICE
% LISA WATSON
25 W 18TH ST
NEW YORK, NY  10011

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

                    WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

        Thank you for applying for an Employer Identification Number (EIN). We assigned you
EIN 81-3255558. This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees. Please keep this notice in your permanent
records.

        When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above. Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN. If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

        Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                    Form 941                    10/31/2016
                    Form 940                    01/31/2017

        If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice. If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods.*

        We assigned you a tax classification based on information obtained from you or your
representative. It is not a legal determination of your tax classification, and is not
binding on the IRS. If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue). Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election.* See Form 8832 and its instructions for additional information.

        If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945,
CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a
Welcome Package shortly, which includes instructions for making your deposits
electronically through the Electronic Federal Tax Payment System (EFTPS). A Personal
Identification Number (PIN) for EFTPS will also be sent to you under separate cover.
Please activate the PIN once you receive it, even if you have requested the services of a
tax professional or representative. For more information about EFTPS, refer to
Publication 966, *Electronic Choices to Pay All Your Federal Taxes.* If you need to
make a deposit immediately, you will need to make arrangements with your Financial
Institution to complete a wire transfer.

(IRS USE ONLY)      575A              07-15-2016   FAST  B   9999999999   SS-4

The IRS is committed to helping all taxpayers comply with their tax filing
obligations.  If you need help completing your returns or meeting your tax obligations,
Authorized e-file Providers, such as Reporting Agents (payroll service providers) are
available to assist you.  Visit the IRS Web site at www.irs.gov for a list of companies
that offer IRS e-file for business products and services.  The list provides addresses,
telephone numbers, and links to their Web sites.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records.  **This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you.**  You
  may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is FAST.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

                     Keep this part for your records.      CP 575 A (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                         CP 575 A
correct any errors in your name or address.
                                                              9999999999

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  07-15-2016
(    )     -                               EMPLOYER IDENTIFICATION NUMBER:  81-3255558
_____  _____    FORM:  SS-4            NOBOD

INTERNAL REVENUE SERVICE                   FAST FOOD JUSTICE
CINCINNATI  OH   45999-0023                % LISA WATSON
ԱլԱլԱԱԱԱԱԱԱԱԱԱԱԱԱԱ                          25 W 18TH ST
                                           NEW YORK, NY  10011

Fast Food Justice, Inc.
EIN 81-3255558

# BYLAWS

## OF

## FAST FOOD JUSTICE

### Article I

### NAME

The name of the corporation is Fast Food Justice

### Article II

### OFFICES AND REGISTERED AGENT

1.     <u>Principal Office</u>.  The principal office of the corporation and such other offices as it may establish shall be located at such place or places, either within or without state of the New York, as may be designated by the Board of Directors.

2.     <u>Registered Office</u>.  The corporation shall continuously maintain within New York a registered office in compliance with the New York Not-For-Profit Corporation Law.

3.     <u>Registered Agent; Changes</u>.  The corporation shall continuously maintain within New York a registered agent in compliance with the New York Not-For-Profit Corporation Law. The corporation shall obtain for its records a written consent from the individual agreeing to serve as the corporation's registered agent.

### Article III

### BOARD OF DIRECTORS

1.     <u>General Powers and Duties</u>.  Management of the affairs of the corporation shall be vested in its Board of Directors.  The Board of Directors shall possess, and may exercise, any and all powers granted to the corporation under the New York Not-For-Profit Corporation Law and its Certificate of Incorporation, subject to the limitations set forth in the Certificate.

1

2.    <u>Number</u>. The number of directors shall be fixed by resolution of the Board of Directors, but shall not be fewer than three (3) or more than fifteen (15).

3.    <u>Qualifications</u>. Directors need not be residents of New York.

4.    <u>Terms; Election</u>. Directors shall serve three (3) year terms. Otherwise, the term of office of any individual director shall terminate upon the effective date of his or her resignation, which may be made at any time by giving notice thereof in writing; upon his or her death; or upon a vote of a majority of the entire Board then in office to remove him or her from office. New directors shall be elected to the Board by the majority vote of the Board. A director may succeed him or herself.

5.    <u>Quorum and Voting</u>. A majority of the entire membership of the Board of Directors as fixed in these Bylaws shall constitute a quorum for the transaction of any business, but in no case shall a quorum consist of less than two members. In the absence of a quorum, a majority of those members present may adjourn the meeting. When a quorum is once present to organize a meeting, it is not broken by the subsequent departure of one or more directors from the meeting, provided that at least one quarter of the Board is present at all times. The affirmative vote of a majority of the directors present at a Board meeting at which a quorum is present shall be necessary and sufficient to the making of decisions by the Board, except as a larger vote may at any time be otherwise specifically required by the New York Not-For-Profit Corporation Law, the Certificate of Incorporation, or these Bylaws.

6.    <u>Meetings</u>. An annual meeting of the Board of Directors shall be held at a time and place to be determined by the President. Special meetings of the Board of Directors may be called by the President or Secretary upon the written request of one-third of the Board. Regular or special meetings may be held either within or without the state of New York.

7.    <u>Notice</u>. At least five (5) days' notice shall be given to each director of an annual or other regular meeting of the Board of Directors. A special meeting of the Board of Directors may be held upon notice of twenty-four (24) hours. Notice of a meeting of the Board of Directors shall specify

the date, time, and place of the meeting, but, except as provided in Article VII of these Bylaws (relating to amendment of the Certificate of Incorporation and Bylaws), need not specify the purpose for the meeting or the business to be conducted. Notice must be either delivered personally to each director or mailed (including the sending of a fax, or electronic mail) to his or her business address. If such notice is given by mail, it shall be deemed delivered when deposited in the United States mail properly addressed and with postage prepaid thereon. If such notice is given by fax or electronic mail, it shall be deemed delivered when transmitted.

Notwithstanding the foregoing, a director may waive notice of any regular or special meeting of the Board of Directors by written statement filed with the Board of Directors, or by oral statement at any such meeting. Attendance at a meeting of the Board of Directors shall also constitute a waiver of notice, except where a director states that he or she is attending for the purpose of objecting to the conduct of business on the ground that the meeting was not lawfully called or convened.

8. <u>Unanimous Consent</u>. Any action required or permitted to be taken at a meeting of the Board of Directors may be taken without a meeting, provided all directors consent in writing, including by mail, fax or e-mail, and set forth in the same writing the action or decision taken or made. Consent in writing shall have the same force and effect as a unanimous vote, and may be described as such in any document executed by or on behalf of the corporation.

9. <u>Teleconferencing</u>. One or more directors may participate in a meeting by means of a conference telephone or similar communications equipment through which all directors participating in the meeting can speak to and hear each other at the same time provided that each person entitled to participate in the meeting consents to the meeting being held by such means. Participation by such means shall constitute presence in person at the meeting.

10. <u>Compensation and Expenses</u>. No director shall be compensated for his or her service as a director, unless otherwise decided by the Board of Directors. Directors may be reimbursed for

expenses incurred for the purposes of participating in meetings of the Board and while otherwise acting on behalf of the corporation.

## Article IV

## COMMITTEES

1.     Executive Committee. By a vote of a majority of all the directors in office, the Board of Directors may designate an Executive Committee consisting of three or more directors. The Board of Directors may designate one or more of the directors as alternate members of the Executive Committee, who may replace any absent or disqualified member at any meeting of the Committee upon the request of the President.  Except as otherwise required by law or these Bylaws, the Executive Committee shall have such authority as the Board of Directors shall grant to it for the management of the corporation.  In the absence of a resolution expressly granting authority to the Executive Committee, the Executive Committee shall have authority to act for the Board of Directors, except that it shall not have authority to elect officers or fill vacancies on the Board of Directors or on committees created under this Article IV.  The Executive Committee shall keep regular minutes of its proceedings and shall report the same to the Board of Directors when required.  Vacancies in the Executive Committee shall be filled by the Board of Directors at a regular or special meeting.

2.     Other Committees.  The Board of Directors may create other committees consisting of directors or other persons, which committees shall have such authority as the Board of Directors may by law and these Bylaws direct.

## Article V

## OFFICERS

1.     Offices.  The officers of the corporation shall consist of a President, a Treasurer, a Secretary and such other officers and assistant officers as the Board of Directors may from time to time elect.  The duties of any such officers and assistant officers shall be fixed by the Board of Directors, or by the President if authorized to do so by the Board of Directors.

4

2.    Terms.  The officers shall be elected by the Board of Directors and shall hold office for a term of three (3) years from the effective date of their election.  An individual may serve as an officer for succeeding terms without limitation.  The term of office of any officer shall terminate upon the effective date of his or her resignation submitted orally or in writing; upon his or her death; or upon a majority vote of the Board of Directors to remove him or her from office.  Any vacancy among the officers shall be filled by the Board of Directors.

3.    Qualifications.  Officers may, but need not be, directors of the corporation.  Any two or more offices may be held by the same person, except the offices of President and Secretary.

4.    General Powers and Duties.  The duties and powers of the officers of the corporation shall be as provided in these Bylaws or (except to the extent they are inconsistent with these Bylaws) shall be those customarily exercised by corporate officers holding such offices.

5.    President.  The President shall act as the chief elected officer of the corporation, shall supervise all of the affairs of the corporation in accordance with policies and directives approved by the Board of Directors, and shall perform such other duties as the Board of Directors may from time to time prescribe.  The President shall have the power to change the registered agent and registered office of the corporation.

6.    Secretary.  The Secretary shall record or cause to be recorded all votes and minutes of all proceedings of the Board of Directors in a book to be kept for that purpose.  He or she shall give or cause to be given notice of all meetings, where required, and shall perform such other duties as may be prescribed by the Board of Directors or the President.

7.    Treasurer.  The Treasurer shall keep or cause to be kept full and accurate account of the receipts and disbursements of the corporation, and shall deposit or cause to be deposited all moneys and other assets in the name and to the credit of the corporation in such depositories as may be designated by the Board of Directors.  He or she shall disburse or cause to be disbursed corporate funds, making proper vouchers for such disbursements, and shall render to the President and the Board,

5

upon request, an accounting of all his or her transactions as Treasurer and of the financial condition of the corporation.  He or she shall also perform such other duties as the Board of Directors may prescribe.

8.    <u>Inspections</u>.  Both the Secretary and Treasurer shall permit any director or his or her duly authorized attorney to inspect all books and records of the corporation, for any proper purpose at any reasonable time.

<u>Article VI</u>

MISCELLANEOUS PROVISIONS

1.    <u>Fiscal Year</u>.  The annual accounting period of the corporation shall be from January 1 to December 31 of each year unless otherwise determined by the Board of Directors.

2.    <u>Checks</u>.  All checks, drafts, or other orders for the payment of money shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

3.    <u>Contracts</u>.  All contracts, notes or other evidences of indebtedness, and leases of space for the corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

4.    <u>Insurance</u>.  The corporation shall purchase and maintain general liability insurance to protect the corporation from liability for, among other claims, torts such as defamation, trespass, etc. The corporation shall purchase and maintain a fidelity bond covering all directors, officers, employees and agents who handle money and other property of the corporation.

5.    <u>Federal and State Filing Obligations</u>.  The corporation shall implement procedures, and where appropriate retain the necessary professional assistance, to insure that all statements and reports required to be filed either with the state of New York or the federal government by the corporation, including tax returns, are timely filed.

6

## ·Article VII

## AMENDMENTS

1.      <u>Amendments to Bylaws</u>.  The Bylaws may be altered or amended, or new Bylaws

adopted, at any meeting of the Board of Directors, by a vote of a majority of the directors in office,

except if the amendment seeks to change the quorum threshold set forth in Article III, Section 5, in

which case two-thirds (2/3) of the directors in office must approve the amendment. Notice must be

given at least five (5) days' before the meeting at which the amendment will be voted on by the Board

of Directors.

2.      <u>Amendments to the Certificate of Incorporation</u>.  The Certificate of Incorporation may

be altered or amended, or a new Certificate of Incorporation adopted, at any meeting of the Board of

Directors, by a vote of a majority of the directors in office, if at least five (5) days' written notice is

given of the intention to take such action at such meeting.

## Article VIII

## INDEMNIFICATION AND INSURANCE

1.      Insurance.  The corporation may provide indemnification insurance for the directors and

officers, and the Board of Directors shall select the amount and limits of such insurance policy.

2.      Indemnification.  To the extent permitted by the New York Non-For-Profit Corporation

Law, any person made or threatened to be made a party to any action, suit, or proceeding by reason of

the fact that he or she is or was a director or officer of the corporation shall be indemnified by the

corporation against any liability and the reasonable expenses, including attorney's fees and

disbursements, incurred by him or her in connection with the defense or settlement of such action, suit,

or proceeding, or in connection with any appearance therein.

7

3.   Lists of Indemnification.  Notwithstanding the above, the corporation will indemnify a person only if he or she acted in good faith and reasonably believed that his or her conduct was in the corporation's best interest. In the case of a criminal proceeding, the person may be indemnified only if he or she had no reasonable cause to believe his or her conduct was unlawful.

Adopted by the Board of Directors on the 11th day of July, 2016.

# FAST FOOD JUSTICE
## POLICY ON CONFLICT OF INTEREST

This Conflict of Interest Policy is designed to help Directors, Officers, and key employees of Fast Food Justice ("FFJ") identify situations that present potential conflicts of interest and to provide a procedure to appropriately manage conflicts of interest in accordance with legal requirements and the goal of accountability and transparency in the operations of FFJ.

## Article I
### PURPOSE OF POLICY

This Policy is intended to clarify for covered persons (defined below) the principles that must guide their conduct, and FFJ's, in resolving ethical and legal questions that might arise with respect to conflicts of interest. The purpose of the Policy is to protect FFJ's interests when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an Officer, Director or key employee of FFJ. The Policy is designed to ensure that all organizational decisions are made solely to promote the best interests of FFJ without favor or preferences based on personal considerations.

The Policy is intended to supplement, but not replace, any applicable state and federal laws governing conflicts of interest applicable to nonprofit and charitable organizations.

## Article II
### DEFINITIONS

1. **"Conflict of Interest"** means any situation in which secondary interests, such as financial, professional or personal interests, including the interests of a family member (as defined below), may compromise one's professional or business judgment or business obligations.

2. **"Family Member"** means spouse, parent, parent-in-law, domestic partner, sibling, half-sibling, natural or adopted child, grandchild, great grandchild and the spouses of children, grandchildren and great grandchildren.

3. **"Covered Person"** means a member of the FFJ Board of Directors, an Officer of FFJ, and any "key" employee of FFJ -- an individual in a position to influence any purchasing decision or business transaction of FFJ.

## Article III
### DUTY OF LOYALTY AND REPRESENTATIONS

1. **The Law.** Conflict-of-interest statutes in New York State's Not-For-Profit Corporations Law focus primarily on the duty of loyalty. This duty broadly commands members of the Board of Directors and Officers of FFJ to be faithful to the organization's

1

best interests and refrain from using their organizational position to advance a personal agenda at the organization's expense.

**2.     Basis of Decisions.** All organizational decisions are to be made solely to promote the best interests of FFJ, without favor or preference based on personal considerations. Accordingly, with respect to their personal economic interests, covered persons should not be allowed to participate as advocates in their own behalf (or on behalf of any organization in which they or a Family Member has a personal interest). Similarly, covered persons may not obtain for themselves, or their Family Members or friends, a material benefit of any kind from their association with FFJ. The fairness of any transaction involving potential conflicting interests is usually analyzed by comparing the transaction at issue with similar transactions negotiated by parties dealing at "arms length," i.e., parties who have no other relationships and are presumed to base their decisions on rational economic interests.

**3.     Conflicts of Interest**

Covered persons may have a conflict of interest if they have a private interest, financial or otherwise, in a transaction or project under consideration by FFJ's Board of Directors, or when there is a proposal to act on an issue, matter or transaction in which FFJ has an interest and in which the covered person may have an interest separate from that of FFJ. The private interest may be a direct benefit to the covered person, or an indirect benefit through another entity with which the covered person has a family, business or other affiliation; for example, where the covered person or his or her spouse serves on the Board of Directors or has a decision-making position in an entity seeking to do business with FFJ.

Although it is not possible to list every circumstance that gives rise to a potential conflict of interest, the following serve as examples of the kinds of activities that might constitute a conflict of interest and must be reported in a timely fashion in accordance with this Conflict of Interest Policy.

a.     **Financial Interest.** To have directly, or indirectly through business or family:

   (i)     An ownership or investment interest in any entity with which FFJ has a transaction or arrangement; or

   (ii)    A compensation arrangement with FFJ, or with any entity or individual with which FFJ has a transaction or arrangement; or

   (iii)   A current or potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which FFJ is negotiating a transaction or arrangement.

b.     **Business Affiliation**

To serve as a Director, Trustee, Officer, Partner, employee, Consultant or advisor of any person, firm or organization that is a supplier of goods or services to FFJ, or which may have interests that conflict with those of FFJ.

2

**c.    Government Affiliation**

To hold an elected or appointive office or position in a branch of government, or in any regulatory agency, having authority or jurisdiction over FFJ.

**d.    Political Activities, Lobby and Contributions**

To participate or intervene in any way in political campaigns or contribute to political parties, groups or candidates in the name of, or using the resources of, FFJ. Covered persons may, on an entirely personal and voluntary basis, contribute non-work time, personal money or resources to such political or other activity.  FFJ does not intend to limit such involvement so long as it is lawful, conducted on the covered person's own time, and does not detract from or interfere with the covered person's responsibilities to FFJ. Covered persons may, at the request of FFJ, appear on its behalf before federal, state, or municipal legislative bodies, or regulatory agencies, to confer with legislators or their representatives on matters of interest to FFJ.

**e.    Gifts, Gratuities, Compensation**

To accept a gift, gratuity, entertainment or other material benefit from any person or entity that does, or is seeking to do, business with FFJ, under circumstances where it might be inferred that such gift, gratuity, entertainment or other material benefit was intended to, or possibly could, influence the recipient in the performance of his or her duties.  Acceptance of items or entertainment of nominal or insignificant value that are not related to any particular transaction or activity of FFJ will not result in a conflict of interest.

**f.    Compensation.**  To serve as a voting member of the Board, or a committee, that presides over decisions regarding one's own compensation from FFJ, or be present when the Board, or committee, is deliberating or voting upon one's own compensation.

**g.    Business with Friends and Relatives**

To conduct business with a personal friend or Family Member on behalf of FFJ.


It is the responsibility of the Board of Directors to determine if a potential conflict of interest constitutes an actual conflict of interest.  The law does not require the prohibition of all conflicts of interest.  Rather, the goal is to permit FFJ to manage conflicting interests successfully and to reach optimum decisions with knowledge of the conflicts.  Accordingly, so long as potential conflicts are properly disclosed and a transaction is nonetheless believed to be in the best interests of FFJ, it may lawfully be undertaken.

## Article IV

## PROCEDURES

1.    **Duty to Disclose.**  As soon as any potential conflict of interest arises, the covered person must disclose the potential conflict to the Executive Director or President of FFJ.  The Executive Director or President shall promptly notify the Board of Directors of the potential conflict.

2.    **Determining Whether a Conflict Exists.** The covered person shall be given the opportunity to disclose all material facts to the Board of Directors. After disclosure of the potential conflict to the Board, and Board discussion with the covered person, the covered person shall leave the Board meeting while the conflict of interest is discussed and voted upon by the Directors.   If the covered person is a Board member, the remaining Board members shall decide if a conflict of interest exists.

3.    **Procedures to Address Conflict**

   a.    The covered person with the potential conflict may make a presentation to the Board of Directors, but after such presentation shall leave the meeting during the discussion of, and the vote upon, the transaction or arrangement involving the possible conflict of interest.

   b.    The President of FFJ shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

   c.    After exercising due diligence, the Board shall determine whether FFJ can, with reasonable efforts, obtain a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict.

   d.    If a more advantageous transaction or arrangement that does not give rise to a conflict is not reasonably possible under the circumstances, the Board shall determine by a majority vote of the disinterested Directors whether the transaction or arrangement is in FFJ's best interest and for its own benefit, and whether the transaction is fair and reasonable. In conformity with the above, the Board shall decide whether to enter into the transaction or arrangement.

### Article V

### FAILURE TO DISCLOSE ACTUAL OR POSSIBLE CONFLICT OF INTEREST

1.    If the Board has reasonable cause to believe a covered person has failed to disclose an actual or possible conflict of interest, it shall inform the person of the basis of such belief and afford him or her an opportunity to explain the alleged failure to disclose.

2.    If, after hearing the covered person's response and making such further investigation as may be warranted under the circumstances, the Board determines that the covered person has in fact failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action, including, if appropriate, removal of the covered person from the Board, Office or employment.

### Article VI

### RECORD OF PROCEEDINGS

The minutes of the Board meeting considering a conflict of interest shall include the following:

1.    Name(s) of persons who disclosed or otherwise were found to have an actual or possible financial interest, or other possible or actual conflict of interest;

2.    Nature of the financial interest or conflict of interest;

4

3.      Any action taken to determine whether a financial interest or other conflict of interest was present;

4.      The Board's decision as to whether a financial interest or other conflict of interest in fact existed;

5.      Name(s) of persons who were present for the discussion(s) and vote relating to the transaction or arrangement;

6.      Content of the discussion(s), including any alternative to the proposed transaction or arrangement; and

7.      Record of any votes taken in connection with the matter.

**Article VII**

**ANNUAL STATEMENTS**

Each covered person shall annually sign and file with the Secretary of FFJ a statement affirming that he or she:

1.      Has received a copy of the Conflict of Interest Policy;

2.      Has read and understands the Policy;

3.      Agrees to comply with the Policy; and

4.      Understands FFJ is a charitable organization and that, in order to maintain its tax-exemption, FFJ must engage in activities that accomplish one or more of its tax-exempt purposes.


Adopted by the Board of Directors of Fast Food Justice on the ___ day of ___, 2016.

5

## FAST FOOD JUSTICE ("FFJ")
## <u>ANNUAL CONFLICT OF INTEREST STATEMENT</u>

[ ]   I have received, read and understand FFJ's Conflict of Interest Policy, and agree to comply with it.

[ ]   I understand that FFJ is a charitable organization and that, in order to maintain its tax-exemption, FFJ must be operated exclusively in furtherance of its tax-exempt purposes.

I have no items to report

[ ]   without exception

OR

[ ]   Except as described in the attached disclosure statement

[ ]   I agree to promptly advise the Secretary of FFJ of any change in circumstances that arise during the 2016 reporting year that could create a potential conflict of interest.

Name   _____
        (Print)


Name   _____
        (Signature)


Date   _____

6

## CONFLICT OF INTEREST QUESTIONNAIRE AND DISCLOSURE FORM

Pursuant to FFJ's Conflict of Interest Policy requiring disclosure of any actual or potential conflict of interest, and consistent with the purpose and intention of the Policy, I hereby state that I or any Family Member (as defined in Article II, section 2 of the Policy) has the following affiliations or interests, and has taken part in, is now taking part in, or may take part in, the transactions that, considering my position in and relationship to FFJ, could possibly constitute a conflict of interest.   State "none" where applicable.

1.       **Financial Interests (Article II, section 3(a).)**

Please state any of the following financial interests you or a Family Member may have:

(i)     An ownership or investment interest in any entity with which FFJ has a transaction or arrangement; or

(ii)    A compensation arrangement with FFJ, or with any entity or individual, with which FFJ has a transaction or arrangement; or

(iii)   A current or potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which FFJ is negotiating a transaction or arrangement.

Please state "none" if applicable.

_____

_____

_____

**(a)     Business Affiliations**

Please state any affiliations you or a Family Member has as a Director, Trustee, Officer, Partner, employee, Consultant or advisor of any person, firm or organization that is a supplier of goods or services to FFJ, or which may have interests that conflict with those of FFJ.

_____

_____

_____

Please state "none" if applicable.

**(b)     Government Affiliations**

Please state any elected or appointive office or position you or a Family Member

7

holds in any branch of government, including any regulatory agency, having authority or jurisdiction over FFJ.

_____

_____

_____

_____

Please state "none" if applicable.

### (c)   Gifts, Gratuities, Compensation

Please state any gifts, gratuities, entertainment or other material benefits you or a Family Member has accepted from any from person or entity that does, or is seeking to do, business with FFJ, from which it might be inferred that such gift, gratuity, entertainment or material benefit was intended to, or possibly could, influence the performance of your duties.   Acceptance of items or entertainment of nominal or insignificant value unrelated to any particular transaction or activity of FFJ need not be disclosed.

_____

_____

_____

Please state "none" if applicable.

### (d)   Transactions

To the extent not captured above, please state any transaction in which FFJ is a participant and which you or a Family Member may have a competing interest.

_____

_____

_____

_____

Please state "none" if applicable.

### (e)   Other

Please state any other activities in which you or a Family Member is engaged that might be regarded as constituting a potential conflict of interest.  For example, a potential conflict of interest exists if one conducts business with a personal friend or Family Member on behalf of FFJ.

_____

_____

_____

8

Please state "none" if applicable.

Name        _____
                 (Print)


Name        _____
                 (Signature)


Date        _____

## RETAINER

FAST FOOD JUSTICE, INC. ("FFJ"), by its undersigned representative, hereby retains GLADSTEIN, REIF & MEGINNISS, LLP, and attorneys affiliated with said firm, to provide such legal services as FFJ may request. If the firm, at FFJ's request, undertakes to represent FFJ in litigation or potential litigation, FFJ understands and agrees that the firm will undertake all services appropriate to the representation of FFJ therein.

FFJ shall compensate the firm for legal services at the rate of two hundred dollars ($200) per hour, except that services provided by an associate of the firm shall be compensated at the rate of one hundred and seventy-five dollars ($175) per hour. FFJ shall also reimburse the firm for any and all expenses incurred in the representation of FFJ.

Ordinarily the lead attorney will be Judith Padow.

The firm will bill for services and/or expenses on a monthly basis by itemized bills. FFJ agrees to pay for the services and expenses reflected on each bill within twenty (20) calendar days of receipt thereof.

If the firm represents FFJ on any matter on which attorney's fees and/or expenses are recovered from another party, such recovery shall be treated as a credit toward payment by FFJ of bills received from the firm for services rendered and/or expenses incurred. The firm shall be entitled to retain any attorney's fees recovered from another party in excess of fees billed by it for services rendered to FFJ.

The person executing this retainer, on behalf of FFJ, warrants that (s)he is authorized by FFJ to do so.

1

The person executing this retainer on behalf of the firm warrants that (s)he is authorized by the firm to do so.

Dated: July 11th, 2016

FAST FOOD JUSTICE, INC.                    GLADSTEIN, REIF & MEGINNISS, LLP

By: _Autumn Weintraut_                     By: _James Reif_
                                                James Reif

# Form 1023 Checklist
## (Revised June 2006)
### Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code

**Note.** *Retain a copy of the completed Form 1023 in your permanent records. Refer to the* General Instructions *regarding Public Inspection of approved applications.*

**Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.**

☑ Assemble the application and materials in this order:
- Form 1023 Checklist
- Form 2848, *Power of Attorney and Declaration of Representative* (if filing)
- Form 8821, *Tax Information Authorization* (if filing)
- Expedite request (if requesting)
- Application (Form 1023 and Schedules A through H, as required)
- Articles of organization
- Amendments to articles of organization in chronological order
- Bylaws or other rules of operation and amendments
- Documentation of nondiscriminatory policy for schools, as required by Schedule B
- Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
- All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

☑ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

☑ Employer Identification Number (EIN)

☑ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.
- You must provide specific details about your past, present, and planned activities.
- Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
- Describe your purposes and proposed activities in specific easily understood terms.
- Financial information should correspond with proposed activities.

☑ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | | |
|---|---|---|---|
| Schedule A | Yes ___ No ✔ | Schedule E | Yes ___ No ✔ |
| Schedule B | Yes ___ No ✔ | Schedule F | Yes ___ No ✔ |
| Schedule C | Yes ___ No ✔ | Schedule G | Yes ___ No ✔ |
| Schedule D | Yes ___ No ✔ | Schedule H | Yes ___ No ✔ |

☑ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.

- Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) _Page # 9, A_
- Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law _9 E_

☑ Signature of an officer, director, trustee, or other official who is authorized to sign the application.
- Signature at Part XI of Form 1023.

☑ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
P.O. Box 192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

Printed on recycled paper